IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| SHAWNDELLE MCDOWELL, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 16-cv-3065 |
| | ) | |
| v. | ) | Judge Robert M. Dow, Jr. |
| | ) | |
| NANCY BERRYHILL, acting | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM AND OPINION ORDER**

This matter is before the Court on Plaintiff Shawndelle McDowell's motion seeking review of the Commissioner of Social Security's decision to deny his application for disability benefits for the period beginning May 16, 2012 and continuing through the denial date, December 7, 2015.  Plaintiff asks the Court to reverse the decision of the Administrative Law Judge ("ALJ") denying him benefits for this period and either grant his application or remand the case to the Social Security Administration ("SSA") for further proceedings.  For the reasons stated below, the Court reverses the Commissioner of Social Security's decision in part and remands this case for further proceedings consistent with this opinion.

I.     **Background**

A.     **Procedural History**

In May 2010, Plaintiff Shawndelle McDowell ("Plaintiff") filed an application for Supplemental Security income, alleging a disability onset date of April 26, 2010. [Administrative Record ("AR"), at 11.]  Plaintiff's application was denied initially, upon reconsideration, and in an October 12, 2010 decision following a hearing by an ALJ.  [AR, at 19.]  Plaintiff's request for review by the Appeals Council was denied on February 1, 2013.  [AR

at 1.] Plaintiff filed a complaint in the district court and, on December 24, 2014, Magistrate Judge Mason issued an order reversing the ALJ's decision. [AR, at 593.] Magistrate Judge Mason determined that the ALJ improperly assessed Plaintiff's credibility and did not give proper weight to the opinions of two medical experts, and consequently that the ALJ would need to reconsider Plaintiff's residual functional capacity.

The case was remanded to the ALJ, who conducted another hearing on Plaintiff's application. [AR, at 498.] The ALJ found that Plaintiff was under a disability from May 25, 2010 (Plaintiff's application date) through May 16, 2012, but that he experienced medical improvement that restored his ability to work on May 16, 2012 and was able to perform substantial gainful activity as of that date. [AR, at 498-99.] Plaintiff filed a complaint [1] with this Court, challenging the ALJ's determination that he was not disabled from May 16, 2012 until the date of decision.

**B.    Factual Background and Relevant Medical Treatment**

Plaintiff was born on November 7, 1975. He is 5' 11" tall and weighed 285 pounds at the time of the 2015 hearing before the ALJ. [AR, at 203.] In November 1998, Plaintiff was shot in the left thigh, back, and right forehead in an attempted carjacking. [AR, at 184, 201.] The gunshot to the left thigh caused arterial injury, which required surgical repair. [AR, at 184, 188, 190, 203]; see also [14] at 3.

In September 2010, Plaintiff experienced numbness and pain in his left leg. [AR, at 303.] His treating vascular surgeon, Dr. Martin Borhani determined that surgery was necessary. Dr. Borhani performed a left common femoral artery to below-knee popliteal artery with saphenous venous graft. [AR, at 202.] Following the surgery, Plaintiff experienced increased pain, swelling, and drainage of the surgical site. [AR, at 284.] Doctors determined that the surgical

site had become infected and prescribed a course of antibiotics.  [AR, at 279.]  Plaintiff went to the emergency room in October 2010 experiencing swelling in his right upper extremity and pain in his right chest.  [AR, at 241.]  Testing revealed that Plaintiff was suffering from acute venous thrombosis (a type of blood clot in the deep veins of the leg) and cardiomegaly (an enlarged heart).  [AR, at 245, 265, 275]; see also "Deep vein thrombosis," MERRIAM WEBSTER MEDICAL DICTIONARY, https://www.merriam-webster.com/medical/vein%2Bthrombosis (last visited Oct. 26, 2017); "Cardiomegaly," MERRIAM WEBSTER MEDICAL DICTIONARY, https://www.merriam-webster.com/medical/cardiomegaly, (last visited Oct. 26, 2017).  Doctors prescribed Plaintiff a course of anticoagulant medications.  [AR, at 228.]

Plaintiff sought treatment in February 2011 for continued burning pain in his left leg.  He was prescribed the nerve pain medication Neurontin.  [AR, at 491-92.]  Plaintiff was readmitted to the hospital in December 2011 with persistent left leg pain.  [AR, at 809.]  Examination revealed calf tenderness and diminished distal pulses.  [AR, at 811.]  Dr. Borhani performed arterial surgery and a surgical revision to address these symptoms.  [AR, at 812, 818.]  In January 2012, Plaintiff sought medical treatment for an infected left calf wound that stemmed from the previous month's surgery.  [AR, at 694.]  Doctors provided antibiotics and wound care.  [AR, at 735.]  In February 2012, Plaintiff was hospitalized with complications stemming from peripheral vascular disease.  [AR, at 784].  At that time, Dr. Borhani determined that his prior surgery had failed and performed additional arterial surgery.  [AR, at 787.]  In March 2012, Dr. Borhani also performed a debridement (the surgical removal of lacerated, devitalized, or contaminated tissue) of the left calf wound, which had not healed.  [AR, at 749]; see also "Debridement," MERRIAM WEBSTER MEDICAL DICTIONARY, https://www.merriam-webster.com/dictionary/debridement (last visited Oct. 26, 2017).

### C. Medical Assessments

All of the medical assessments considered by the ALJ were conducted before Plaintiff's 2011 and 2012 surgeries and other medical treatments. Specifically, on July 9, 2010, consultative physician Dr. Scott Kale evaluated Plaintiff at the request of the Social Security Administration. [See AR, at 200-209.] Dr. Kale reported that Plaintiff complained of constant numbness and tingling in his left foot, intermittent claudication (limping) when walking half a block or standing 15 minutes, and increasing pain in his left leg while sitting, but did not use a cane to walk. [AR, at 202]; see also "Claudication," MERRIAM WEBSTER MEDICAL DICTIONARY, https://www.merriam-webster.com/dictionary/claudication (last visited Oct. 26, 2017). Dr. Kale observed that Plaintiff had moderate difficulty standing or walking on the toes or heels and was unable to squat and arise. Dr. Kale also noted that Plaintiff had an antalgic gait (a gait that develops as a way to avoid pain while walking), which favored his left leg. [AR, at 207]; see also "Antalgic," MERRIAM WEBSTER MEDICAL DICTIONARY, https://www.merriam-webster.com/medical/antalgic (last visited Oct. 26, 2017). Dr. Kale opined that Plaintiff was suffering from persistent numbness and tingling in the left foot with associated claudication when standing or walking for ten to fifteen minutes, and that these symptoms were consistent with possible arterial insufficiency (any condition that slows or stops the flow of blood through the arteries). [AR, at 209]; see also "Arterial insufficiency," MEDLINE PLUS MEDICAL ENCYCLOPEDIA, https://medlineplus.gov/ency/article/000725.htm (last visited Oct. 26, 2017).

On July 26, 2010, Dr. Frank Jimenez performed a physical residual capacity assessment for the Administration. Dr. Jimenez concluded that Plaintiff could occasionally lift 20 pounds; frequently lift 10 pounds; stand/walk with normal breaks for 6 hours in an 8-hour work day; sit

with normal breaks for about 6 hours in an 8-hour work day; and was limited in pushing and pulling with his lower extremities. [AR, at 211.]

On September 2, 2010, Plaintiff's treating physician Dr. Borhani submitted a medical questionnaire concerning Plaintiff. [See AR, at 218-21.] Dr. Borhani opined that Plaintiff suffered from left leg claudication, pain, and numbness, which occurred when Plaintiff walked for short distances. [AR, at 218.] Dr. Borhani also responded to a number of questions regarding Plaintiff's functional capacity. Dr. Borhani opined that Plaintiff could walk no more than half a block at one time; sit or stand for twenty minutes at one time; sit for less than a total of two hours in an eight-hour day; and stand and walk for a total of two hours in an eight-hour day. [AR, at 218.] However, it is not clear from the questionnaire (or the parties' and ALJ's discussion of the questionnaire) whether Dr. Borhani meant that Plaintiff would have these limitations during the post-operative recovery period only, or also after recovery.[1] Dr. Borhani also opined that, after recovering from surgery, Plaintiff would not need to include periods of walking during an 8-hour work day; would not need unscheduled breaks during a work day; did not need to elevate his leg during prolonged sitting; would not need to use a cane while walking; could frequently lift over 50 pounds; and could frequently twist and occasionally climb ladders and stairs, crouch, squat, bend, and stoop. [AR, at 819-20.] Dr. Borhani further opined that once Plaintiff recovered from surgery, he would be capable of high stress work and was not likely to be absent from work due to his impairments.

On December 14, 2010, Dr. Virgilio Pilapil reevaluated Plaintiff for the Administration. [See AR, at 322-24.] He "affirmed" Dr. Jimenez's "prior determination." [AR, at 324.]

---

[1] In particular, it is not clear that when Dr. Borhani's written note under question 11—"post operative recovery period"—applies only to question 11(a) (concerning how many city blocks Plaintiff can walk without severe pain) or also questions 11(b) through (d) (concerning how long Plaintiff can sit and stand at one time and in total in an 8-hour working day).

On February 28, 2011, Plaintiff's physician Dr. Delawari completed a questionnaire evaluating Plaintiff. He listed Plaintiff's diagnoses as "PVD, Obesity, OSA, [and] Neuropathy," his prognosis as "guarded," and his symptoms as "pain to leg especially on walking and burning pain off and on." [AR, at 327.] He also reported that Plaintiff could walk half a block without rest or severe pain, sit for one hour at a time, stand for 10 minutes at a time, and sit or stand/walk for less than 2 hours in an 8-hour working day, with normal breaks; would need 5 unscheduled 20-minute breaks per day due to pain and numbness; would need to elevate his leg for two hours during an 8-hour work day; must use a cane while standing/walking; could lift 10 pounds occasionally and should never twist, stoop, crouch, or climb ladders; would have 20% "off task" time during a typical work day; would likely have "good days" and "bad days"; and would be absent from work more than four days per month. [AR, at 327-30.] According to Dr. Delawari, the earliest date that his description of symptoms and limitations applied was 2005. [AR, at 330.]

### D.     Hearing On Remand Before the ALJ

The ALJ conducted a hearing on August 31, 2015. [AR, at 520.]

#### 1.     Plaintiff's Testimony

Plaintiff testified that he was not currently receiving treatment for his impairments due to a lack of medical insurance, and that he had not been covered by Medicaid since 2013. [AR, at 527.] Plaintiff testified that he visited the emergency room in 2014 because he was experiencing numbness in his left toes. [AR, at 528.] Plaintiff was prescribed medicine but stopped taking it because he did not have insurance. [AR, at 534.]

Plaintiff also testified that he could walk for one and a half blocks at a time with the use of cane before he experienced severe leg pain. [AR, at 536.] Without the cane, he could walk

for no more than half a block at a time.  *Id.*  He could stand for thirty minutes when he used the cane and fifteen minutes when he did not.  [AR, at 555-56.]  Plaintiff's physical therapist advised him to use a cane to walk, but no doctor prescribed the cane.  [AR, at 540-41.]  Plaintiff further testified that he could sit for no more than ten minutes at a time before he needed to stand due to numbness in his legs.  [AR, at 556.]  His doctors and physical therapist advised him to elevate his legs when he sat.  [AR, at 542.]  Plaintiff spent most days in the company of his children, but could not lift his youngest children (who weighed around twenty pounds) due to leg pain.  [AR, at 552.]  A family friend prepared meals and helped care for the children and perform household chores.  [AR, at 553-54, 560.]

### 2.    The Testimony of the Vocational Expert

A vocational expert ("VE") also testified at the hearing.  The ALJ questioned the VE about the availability of jobs for a hypothetical individual who retained Plaintiff's functional capacity.  The VE testified that such an individual could perform the jobs of surveillance system monitor, order clerk, and address/sorter.  [AR, at 573-74.]  But the individual could not perform those jobs if he needed to elevate his legs for three hours during the work day or twenty-five percent of the work day.  [AR, at 576-77.]

## II.    Disability Standard

To be eligible for disability benefits, a claimant must establish that she suffers from a "disability" as defined by the Social Security Act and related regulations.  The Act defines "disability" as "an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).  To be found disabled, the claimant's impairment must be of such

severity that it not only prevents her from doing her previous work, but also prevents her from engaging in any other kind of substantial gainful work which exists in significant numbers in the national economy, considering age, education, and work experience.  *Id*. § 423(d)(2)(A).

Social Security regulations set out a five-step inquiry to evaluate whether a claimant is entitled to disability insurance benefits.  See 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *see also Stage v. Colvin*, 812 F.3d 1121, 1124 (7th Cir. 2016).  The five-step inquiry requires the ALJ to evaluate, in sequence:

> (1) whether the claimant is currently [un]employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the [Commissioner], see 20 C.F.R. § 404, Subpt. P, App. 1; (4) whether the claimant can perform her past work; and (5) whether the claimant is capable of performing work in the national economy.

*Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000), *as amended* (Dec. 13, 2000).  An affirmative answer leads to the next step, or for Steps 3 and 5, to a finding that the claimant is disabled.  *Id.* A negative answer ends the inquiry and leads to a determination that a claimant is not disabled, except at Step 3.  *Id.*  At Steps 4 and 5, the ALJ must consider the claimant's residual functional capacity ("RFC").  "The RFC is an assessment of what work-related activities the claimant can perform despite her limitations."  *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004).  The ALJ must assess the RFC based on all the relevant record evidence.  *Id.* at 1001 (citing 20 C.F.R. § 404.1545(a)(1)).  The burden of proof is on the claimant for Step 1 through Step 4.  *Clifford,* 227 F.3d at 868.  The burden shifts to the Commissioner at Step 5.  *Id.*

If the ALJ determines that the claimant is disabled at any point in the process, the ALJ must also determine if the disability continues through the date of decision.  In making that determination, the ALJ must follow an additional seven-step process.  See 20 C.F.R. § 416.994(b)(5).  Steps two, three, and seven are relevant here.

At step two, the ALJ must determine whether medical improvement has occurred. 20 C.F.R. § 416.994(b)(5)(ii). Medical improvement is "any decrease in the medical severity of [the claimant's] impairment(s) which was present at the time of the most recent favorable medical decision that [the claimant was] disabled or continued to be disabled." *Id*. § 416.994(b)(1)(i). At step three, the ALJ must assess whether the claimant's medical improvement is related to his ability to work. See *id*. § 416.994(b)(5)(iii). Medical improvement is related to ability to work "if there has been a decrease in the severity . . . of the impairment(s) present at the time of the most recent favorable medical decision and an increase in [the claimant's] functional capacity to do basic work activities." *Id*. § 416.994(b)(1)(iii). At step seven, the ALJ assesses whether work exists that the claimant can perform given his RFC and age, education, and past work experience. *Id*. § 416.994(b)(5)(vii). If the claimant can perform other work, then his is no longer disabled; if he cannot perform other work, his disability continues. *Id*.

**III.     The ALJ's Opinion**

On remand, the ALJ concluded that Plaintiff was disabled under section 1614(a)(3)(A) of the Social Security Act from May 25, 2010 through May 15, 2012, but that Plaintiff's disability ended May 16, 2012. [AR, at 512.] At Step 1, the ALJ found that Plaintiff was not engaging in substantial gainful activity since May 25, 2010, the date Plaintiff became disabled. [AR, at 501.] At Step 2, the ALJ found that from May 25, 2010 through May 15, 2012, Plaintiff had the following severe impairments: status post multiple gunshot wounds with many vascular surgeries and post-surgical complications; status post pulmonary embolism (blood clot in the lung) with peripheral vascular disease; and obesity. [AR, at 501.] At Step 3, the ALJ determined that from May 25, 2010 through May 15, 2012, Plaintiff's impairment or combination of impairments did

not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  [AR, at 502.]

Before Step 4, the ALJ found that from May 25, 2010 through May 15, 2012, Plaintiff had the RFC to perform sedentary work as defined in 20 C.F.R. 416.967(a) except that Plaintiff was restricted in that he could lift/carry 10 pounds occasionally; could sit one hour at a time and 2 hours total in an 8 hour workday; could stand 30 minutes at one time and stand/walk less than 6 hours total in an 8 hour workday; needed to walk every 90 minutes for 3 minutes; needed to take 5 unscheduled breaks a day for 20 minutes due to pain/paresthesia[2] and numbness; required the use of a cane for occasional standing and walking; could never twist, stop/bend, crouch/squat, or climb ladders; and could rarely climb stairs.  [A.R., at 10.]  As a consequence of these limitations, the ALJ concluded that Plaintiff would be limited to a very narrow range of sedentary work that would prevent him from working consistently and reliably on a competitive basis.  *Id.*  Since Plaintiff had no past relevant work, the ALJ moved to the final step in the sequential evaluation.

At step five, the ALJ determined that from May 25, 2010 through May 15, 2012, Plaintiff was not able to do any other work considering his residual capacity, age, education, and work experience because there were no jobs that existed in significant numbers in the national economy that he could have performed.  [AR, at 506.]  Therefore, the Court concluded, Plaintiff was under a disability, as defined by the Social Security Act, from May 25, 2010 through May 15, 2012.

The ALJ then went on to consider whether Plaintiff was disabled from May 15, 2012 through the date of decision, using the seven-step process outlined above.  Steps two, three, and

---

[2] "[A] a sensation of pricking, tingling, or creeping on the skin that has no objective cause." "Parenthesia," MERRIAM WEBSTER MEDICAL DICTIONARY, https://www.merriam-webster.com/dictionary/paresthesia (last visited Oct. 26, 2017).

seven are relevant here.  At step two, the ALJ determined that Plaintiff had experienced medical improvement.  The ALJ found that although Plaintiff's "current severe impairments are the same as that present from May 25, 2010 through May 15, 2012," after May 15, 2012 Plaintiff's impairments "no longer required surgical intervention, he did not suffer from surgical complications, he no longer had pulmonary embolism or required anti-coagulation therapy, and there is no continued evidence of peripheral vascular disease."  [AR, at 506-07.]  The ALJ's determination was based on the lack of medical treatment that Plaintiff received between April 2012 and July 2014.  The ALJ explained that, "[g]iven the claimant's considerable history of medical treatment between August 2010 and March 2012, it is very likely that even without [medical insurance or Medicaid], [Plaintiff] would have gone to the doctor or emergency room if there were any issues related to his vascular surgeries, possible infections, edema, claudication, swelling, inappropriate wound healing, drainage from wounds, or other issues."  [AR, at 508.]

At step three, the ALJ determined that Plaintiff's medical improvement was related to his ability to work because it increased his RFC.  The ALJ found that, beginning May 16, 2012, Plaintiff had the RFC to perform sedentary work as defined in 20 C.F.R. § 416.967(a) except that he could lift and carry 20 pounds occasionally and 10 pounds frequently; could be on his feet standing or walking about 4 hours in an 8 hour workday with normal rest periods; could sit about 6 hours with normal rest periods; could not work at heights, climb ladders, or frequently negotiate stairs; could only occasionally balance, stoop, crouch, kneel, or crawl; and should avoid operating moving or dangerous machinery and frequent operation of foot controls.

The ALJ emphasized that there was "no objective medical evidence supporting that the claimant was disabled or was not able to perform work" at this RFC level.  [AR, at 509.]  The ALJ explained that it was Plaintiff's "responsibility to provide medical evidence showing that he

has an impairment and the severity of that impairment during the time he alleges," and noted that Plaintiff "was even given a month after the hearing to provide additional evidence in support of his claim" but did not provide such evidence. *Id*. (citing 20 C.F.R. 416.912). The ALJ was not persuaded by Plaintiff's testimony that he did not receive medical care because he lacked health insurance and took "official notice that in Chicago there are programs that provide assistance to the indigent patient." [AR, at 510.] The also ALJ found that it would not be worthwhile to send Plaintiff "to an evaluation [with a] consultative examiner," because "that single report could not serve as a basis for a finding of disability since May 16, 2012," as "the laws and [r]egulations require that such a condition be determined to be disabling in spite of treatment." [AR, at 509.]

Evaluating Plaintiff's testimony about his physical limitations, the ALJ found that while Plaintiff's "medically determinable impairments could reasonably be expected to produce the alleged symptoms," Plaintiff's "statements concerning the intensity, persistence and limiting effects of th[o]se symptoms [were] not entirely credible." [AR, at 509.] The ALJ did not elaborate on which parts of Plaintiff's testimony were credible and which were not.

The ALJ also considered the reports of the state agency consultants, Dr. Jimenez and Dr. Pilapil, who opined in 2010 that Plaintiff could occasionally lift 20 pounds; frequently lift 10 pounds; stand/walk with normal breaks for 6 hours in an 8-hour work day; sit with normal breaks for about 6 hours in an 8-hour work day; and was limited in pushing and pulling with his lower extremities. [AR, at 510.] The ALJ gave "only partial weight" to these opinions because the consultants "did not have the opportunity to review the entirety of the longitudinal record." *Id*. The ALJ stated that, given Plaintiff's "history of numerous surgeries and complications," he was giving Plaintiff "the benefit of every due consideration in restricting his residual functional capacity further than indicated by the . . . consultants." *Id*.

The ALJ gave "generally good weight" but "not great weight" to Dr. Borhani's September 2010 assessment of Plaintiff's functional capacity. [AR, at 510.] The ALJ explained that "while Dr. Borhani's statement is essentially supported by the lack of medical evidence 2-3 months after his final vascular surgery, suggesting that [Plaintiff] recovered, some of the restrictions indicated are more restrictive than reasonable or more generous than reasonable." *Id*. "For example," the ALJ found, "the opinion relative to the heavy lifting does not seem reasonable in light of the combination of impairments" but "the considerable restrictions in sitting, standing, and walking do not appear consistent with the resulting impairments, which are essentially none." *Id*. The ALJ also found significant that Dr. Borhani's medical opinion did not support Plaintiff's allegations that he needed to elevate his legs and use a cane. [AR, at 511.] The ALJ gave "[g]reater weight" to Dr. Borhani's medical opinion than Plaintiff's "subjective complaints," which were "wholly without support or corroboration by medical evidence since May 2012." *Id*.

The ALJ did not discuss Dr. Delawari's February 2011 when analyzing Plaintiff's functional capacity after May 15, 2012, even though he gave Dr. Delawari's opinion "good weight" in his analysis of the May 25, 2010 through May 15, 2012 period of disability. [AR, at 505.]

At step seven, the ALJ determined that work existed that Plaintiff could perform given his RFC, age, education, and past work experience and, therefore, Plaintiff's disability ended as of May 16, 2012. The ALJ relied on the VE's testimony that Plaintiff "would be able to perform the requirements of representative occupations such as surveillance systems monitor," "order clerk," and "sorter." [AR, at 511.] The ALJ found it unnecessary to consider the other "hypotheticals" that were given to the vocational expert," adding additional limitations and

restrictions, because he did not find them "to be supported by the objective medical and other evidence." [AR, at 512.]

## IV. Standard of Review

The Social Security Act authorizes judicial review of the final decision of the SSA. 42 U.S.C. § 405(g). An ALJ's decision "must be upheld if it is supported by substantial evidence, which has been defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Ghiselli v. Colvin*, 837 F.3d 771, 776 (7th Cir. Sept. 16, 2016) (quoting *Pepper v. Colvin*, 712 F.3d 351, 631 (7th Cir. 2013)). "[A]n ALJ must articulate, at a minimum, his analysis of the evidence to allow a reviewing court to trace the path of his reasoning and be assured that he considered the important evidence." *Gravina v. Astrue*, 2012 WL 3006470, at *3 (N.D. Ill. July 23, 2012) (citing *Young v. Barnhart*, 362 F.3d 995, 1002 (7th Cir. 2004)). The ALJ is not required to address every piece of testimony and evidence but must "provide some glimpse into the reasoning behind [the] decision to deny benefits." *Id.* In other words, the ALJ must build "an accurate and logical bridge" from the evidence to her conclusion. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008) (citation and internal quotation marks omitted).

A court reviews the entire administrative record, but does not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [its] own judgment for that of the Commissioner." *McKinzey v. Astrue*, 641 F.3d 884, 889 (7th Cir. 2011) (citation and internal quotation marks omitted). If reasonable minds can differ as to whether the applicant is disabled, the court must uphold the decision of the ALJ. *Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir. 2000).

Federal courts have the statutory power to affirm, reverse, or modify the SSA's decision, with or without remanding the case for further proceedings. 42 U.S.C. § 405(g); *Allord v. Astrue*, 631 F.3d 411, 415 (7th Cir. 2011). Thus, the Court may remand the case with instructions for the Commissioner to calculate and award benefits to the applicant. *Allord*, 631 F.3d at 415. However, an award of benefits if appropriate "only if all factual issues involved in the entitlement determination have been resolved and the resulting record supports only one conclusion—that the applicant qualifies for disability benefits." *Id.* "If the [ALJ's] decision lacks adequate discussion of the issues, it will be remanded." *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009).

## V.    Analysis

### A.    Medical Improvement as of May 16, 2012

The ALJ found that Plaintiff achieved medical improvement as of May 16, 2012, because the lack of evidence of medical treatment after this date demonstrated that Plaintiff "no longer required surgical intervention, he did not suffer from surgical complications, he no longer had pulmonary embolism or required anti-coagulation therapy" and "there is no evidence of peripheral vascular disease." [AR, at 506-07.] The ALJ also found that it would not be worthwhile to obtain a consultative exam, because "that single report could not serve as a basis for a finding of disability since May 16, 2012," as "the laws and [r]egulations require that such a condition be determined to be disabling in spite of treatment." [AR, at 509.]

Plaintiff argues that these findings were erroneous because the ALJ should not have "rel[ied] on a lack of evidence" dating from after May 15, 2012 "to suggest that [Plaintiff's] impairments had lessened in severity." [14] at 10. Plaintiff also argues that if the ALJ doubted

that, as of May 16, 2012, Plaintiff's impairments ceased to be disabling, he should have ordered a consultative exam to determine the severity of Plaintiff's impairments.

The Court concludes that remand is required because the ALJ's decision not to order a consultative exam was based on an error of law: his finding that "the laws and [r]egulations require that such a condition be determined to be disabling in spite of treatment." [AR, at 509.] The ALJ did not cite in his opinion, and the Administration does not cite in its brief, any law or regulation that would require Plaintiff's medical conditions to be "disabling in spite of treatment" in order to support a finding of disability. [AR, at 509.] Nor is the Court aware of such laws or regulations. Further, Plaintiff makes the reasonable point that there are some conditions for which there is no course of treatment. He posits that although Plaintiff "underwent treatment that included vascular surgeries . . . and wound debridement in January . . . prior to May 2012, further treatment may not have been beneficial to [Plaintiff] subsequent to that date." [22] at 5. Here, the record does not reflect and the ALJ does not analyze whether there was any course of treatment that would have restored Plaintiff's capacity for substantial gainful activity following his hospitalization for vascular impairments.

The Court recognizes that generally, "the ALJ has discretion to decide how much evidence is needed and whether to order a consultative examination." *Conrad v. Berryhill*, 2017 WL 2424221, at *5-6 (N.D. Ill. 2017); see also *Skinner v. Astrue*, 478 F.3d 836, 844 (7th Cir. 2007). But in this case, the ALJ's decision not to order a consultative exam was based on an error of law. Where "'the Commissioner commits an error of law, reversal is required without regard to the volume of evidence in support of the factual findings.'" *Schoenfeld v. Apfel*, 237 F.3d 788, 796 (7th Cir. 2001) (quoting *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)). Therefore, the Court will remand this case to allow the ALJ to decide whether to order a

consultative exam addressing whether Plaintiff achieved medical improvement after May 15, 2012.

The Court will allow the ALJ to exercise his or her discretion in determining whether a consultative exam is warranted. The Court notes, nonetheless, that "[a] consultative examination is normally required if the evidence is ambiguous, if specialized medical evidence is required but missing from the record, or if there is a change in a condition but the current severity of the impairment is not established." *Poyck v. Astrue*, 414 Fed. Appx. 859, 861, 2011 WL 1086858, at *2 (7th Cir. 2011) (citing 20 C.F.R. § 416.919a(b)). A lack of "objective medical data" may in some cases suggest that a claimant is not disabled, but in other cases may indicate that there is "a gap in the medical evidence that a consultative examination [could] fill[.]" *Skinner v. Astrue*, 478 F.3d 836, 844 (7th Cir. 2007); cf. *Latkowski v. Barnhart*, 267 F. Supp.2 d 891, 902 (N.D. Ill. 2003) (ALJ was not required to obtain a neurological consultation for claimant who sought disability benefits for seizure disorder and leg pain, even though the medical expert stated that he could not make a full evaluation because the medical records were incomplete and suggested a neurological evaluation, where claimant had not had a seizure in eight years, and there was no objective evidence that leg pain was anything other than on occasional problem).

The absence of treatment records from May 2012 through 2015 suggests at least some improvement in Plaintiff's medical condition. Plaintiff does not claim that he had any additional surgeries that are not reflected in the record, and is not taking anticoagulants. However, it is questionable whether the record concerning the scope and severity of Plaintiff's impairments is complete. Most notably, the ALJ found that the record contained "no evidence" of peripheral vascular disease, but did not find that Plaintiff was cured or point to any evidence that the severity of this disease improved after May 15, 2012. [AR, at 507.] According to Plaintiff,

peripheral vascular disease is not curable. A consultative examination could help illuminate the current severity of this disease and the functional limitations it imposes on Plaintiff. If the ALJ decides that a consultative exam is not necessary, the ALJ should explain his or reasoning as to each of Plaintiff's severe impairments.

For these reasons, the Court vacates the portion of the ALJ's opinion that found that Plaintiff was not disabled from May 16, 2012 to the date of decision and remands the case to the ALJ for further proceedings consistent with this opinion.

### B. Residual Functional Capacity

The ALJ determined that Plaintiff had the RFC to perform sedentary work as defined in 20 C.F.R. § 416.967(a) except that he could lift and carry 20 pounds occasionally and 10 pounds frequently; could be on his feet standing or walking about 4 hours in an 8 hour workday with normal rest periods; could sit about 6 hours with normal rest periods; could not work at heights, climb ladders, or frequently negotiate stairs; could only occasionally balance, stoop, crouch, kneel, or crawl; and should avoid operating moving or dangerous machinery and frequent operation of foot controls. The ALJ also found that Plaintiff did not need to elevate his legs or use a cane.

Plaintiff argues that the ALJ erred in assessing his RFC, and that remand is required, because "[n]o physician opined that [Plaintiff] retained the functional capacity that the ALJ found [Plaintiff] to have retained subsequent to May 16, 2012 and [Plaintiff] did not testify to retaining such functional capacity." [14] at 17. Plaintiff also argues that the ALJ "should have obtained a functional capacity examination of [Plaintiff] in order to assess his exertional and non-exertional impairments in the period that began May 16, 2012." *Id*. In addition, Plaintiff

maintains that the ALJ found Plaintiff's own assessment of his functional capacity not credible without providing sufficient analysis.

The Court concludes that the ALJ's assessment of Plaintiff's RFC was not supported by substantial evidence and will remand this case to the ALJ for further proceedings. First, the Court is not "assured that . . . the ALJ considered [all] important evidence" in determining Plaintiff's RFC from May 16, 2012 through the date of decision. *Gravina*, 2012 WL 3006470, at *3. For the May 25, 2010 through May 15, 2012 period, the ALJ adopted Dr. Delawari's findings as to Plaintiff's limitations on sitting (no more than 1 hour at a time), lifting (10 pounds occasionally), unscheduled breaks (5 per day for 20 minutes due to pain/numbness), use of a cane (while standing/walking), and twisting, stooping, crouching, and climbing ladders (rarely). But for the period May 16, 2012 through the date of decision, the ALJ does not consider Dr. Delawari's opinion at all, despite the fact that (1) it is the most recent functional analysis in the record and (2) Dr. Delawari was Plaintiff's treating physician. The Court cannot "trace the path" of the ALJ's decision to accord Dr. Delawari's opinion "good weight" for the closed limitation period, but to ignore the opinion when considering Plaintiff's RFC for the period of May 16, 2012 to the date of decision. *Id.*; see *also Scrogham v. Colvin*, 765 F.3d 685, 699 (7th Cir. 2014) (ALJ "apparent selection of only facts from the record that supported her conclusion, while disregarding facts that undermined it, is an error in analysis that requires reversal"). Similarly, it is unclear from the ALJ's decision why the findings of the hired consultants in 2010 as to Plaintiff's ability to sit (6 hours with normal rest periods) and lift (20 pounds occasionally and ten pounds frequently) were adopted for the period of May 16, 2012 through the date of decision, but rejected for the earlier closed disability period.

A second problem with the ALJ's RFC analysis is that all of the functional assessments in the record were completed by February 2011, before Plaintiff was readmitted to the hospital for persistent pain in his left leg and received additional arterial surgery and a debridement. The Court agrees with Plaintiff that "had the state agency medical consultants"—or Plaintiff's own treating physicians—"reviewed the pertinent evidence from 2011 and 2012" before completing their assessments of Plaintiff's functional capacity, they may have determined that [Plaintiff] was significantly more restricted than they believed him to have been in 2010 or that the ALJ ultimately found him to be." [14] at 16.

An ALJ has a "responsibility to recognize the need for further medical evaluations of [a claimant's] conditions before making h[is] residual functional capacity and disability determinations." *Suide v. Astrue*, 371 Fed. Appx. 684, 689–90, 2010 WL 1508510, at *6 (7th Cir. 2010) (citing *Golembiewski v. Barnhart,* 322 F.3d 912, 918 (7th Cir. 2003) (remanding where ALJ ignored new medical issue but should have sought more information); *Smith v. Apfel,* 231 F.3d 433, 437 (7th Cir. 2000) (remanding where ALJ discounted severity of claimant's arthritis without ordering updated x-rays); *Murphy v. Astrue,* 496 F.3d 630, 635 (7th Cir. 2007) (remanding where ALJ failed to obtain additional records needed for medical expert to provide full and fair evaluation of impairments)). In this case, none of the doctors who evaluated Plaintiff's functional capacity did so after viewing the entire longitudinal record of Plaintiff's medical conditions. Therefore, the Court concludes that the case must be remanded to the ALJ for further assessment of Plaintiff's functional capacity from May 16, 2012 onward. See, *e.g.*, *Suide*, 371 Fed. Appx. at 689–90, 2010 WL 1508510, at *6 (ALJ's conclusion that claimant could stand or walk for six hours in a typical work day not supported by the evidence where, among other things, one of the medical opinions on which ALJ relied as made before the claim

suffered a second stroke and more injuries from a fall, "two events that may have changed [the claimant's] condition significantly"); *Campbell v. Astrue*, 627 F.3d 299, 309 (7th Cir. 2010) (remand to ALJ for further assessment of claimant's mental limitations was necessary where, among other things, the ALJ relied on opinions of state agency psychiatrist and psychologist who had reviewed only part of claimant's medical records, which did not include subsequent diagnoses of psychiatric disorders).

A third issue that should be given closer consideration on remand is the credibility of Plaintiff's own testimony concerning his functional limitations. The ALJ's opinion states that Plaintiff was given the "benefit of every due consideration" in determining his RFC, [AR, at 510], but nonetheless adopts most of the findings of the consulting physicians on Plaintiff's functional capacity. The ALJ did not specifically address why he found not credible Plaintiff's testimony that he needed a cane to stand/walk, could not sit for more than ten minutes without experiencing numbness, and needed to elevate his legs while sitting. Instead, the ALJ simply concluded without analysis that Plaintiff's "statements concerning the intensity, persistence and limiting effects" of his medical conditions were "not entirely credible." [AR, at 509.] The Court agrees with Plaintiff that this boilerplate language is insufficient to allow the Court to trace the path of the ALJ's reasoning. See *Martinez v. Astrue*, 630 F.3d 693, 696 (7th Cir. 2011) (ALJ failed to identify which of claimant's statements he found to be not credible or how credible or not credible he found the statements to have been when he concluded that claimant's allegations were not entirely credible); *Spiva v. Astrue*, 628 F.3d 346, 348 (7th Cir. 2010) (ALJ did not explain what he intended when he found claimant's allegations to have been not entirely credible).

The ALJ noted generally that Plaintiff did not go to the hospital between May 2012 and the date of decision. But the Court does not follow how this necessarily undermines Plaintiff's credibility as to his functional limitations. It is entirely possible that Plaintiff did not think that his leg pain and numbness merited trips to the emergency room; but this does not mean that these symptoms have no effect on Plaintiff's job-related functioning. Further, an "ALJ may not discredit a claimant's testimony about her pain and limitations solely because there is no objective medical evidence supporting it." *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009); see *also Vanprooyen v. Berryhill*, 864 F.3d 567, 572 (7th Cir. 2017). Pursuant to Social Security regulations, the Commissioner "must always attempt to obtain objective medical evidence and, when it is obtained, . . . will consider it in reaching a conclusion as to whether [a claimant is] disabled," but "will not reject [a claimant's] statements about the intensity and persistence of [his or her] pain or other symptoms or about the effect [those] symptoms have on [his or her] ability to work solely because the available objective medical evidence does not substantiate [the claimant's] statements." 20 C.F.R. § 404.1529(c)(2). And in this case, there is medical evidence supporting Plaintiff's alleged limitations—Dr. Delawari's functional assessment. As noted above, the ALJ did not discuss Dr. Delawari's opinion in considering Plaintiff's RFC for the period of May 16, 2012 through the date of decision. In short, the ALJ "failed to build a logical bridge between the evidence and his conclusion that [Plaintiff's] testimony was not credible." *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009).

For these reasons, the Court concludes that the ALJ's determination of Plaintiff's RFC from May 16, 2012 through the date of decision was not supported by substantial evidence. This case is remanded to the ALJ for further proceedings consistent with this opinion.

## VI.     Conclusion

For all the reasons set forth above, the Court reverses the Commissioner of Social Security's decision in part and remands this case for further proceedings consistent with this opinion.

Dated: October 30, 2017

_____

Robert M. Dow, Jr.
United States District Judge